# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

THOMAS J. INGRASSIA,                )
                                    )
    Plaintiff,                      )
                                    )
v.                                  )    No. 4:12CV257 JCH
                                    )
KEITH SCHAFER, et al.,              )
                                    )
    Defendants.                     )

## MEMORANDUM AND ORDER

This matter is before the Court upon the motion of Thomas Ingrassia, a civil detainee at Missouri's Sex Offender Rehabilitation and Treatment Services ("SORTS") facility, for leave to commence this action without payment of the required filing fee. Having reviewed Plaintiff's financial affidavit, the Court will grant the motion. Furthermore, after reviewing the complaint, the Court will partially dismiss the complaint and will order the Clerk to issue process or cause process to be issued on the non-frivolous portions of the complaint.

## 28 U.S.C. § 1915(e)

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss a complaint filed in forma pauperis if the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. An action is frivolous if it "lacks an arguable basis in either law or fact."

Neitzke v. Williams, 490 U.S. 319, 328 (1989). An action is malicious if it is undertaken for the purpose of harassing the named defendants and not for the purpose of vindicating a cognizable right. Spencer v. Rhodes, 656 F. Supp. 458, 461-63 (E.D.N.C. 1987), aff'd 826 F.2d 1059 (4th Cir. 1987).

To determine whether an action fails to state a claim upon which relief can be granted, the Court must engage in a two-step inquiry. First, the Court must identify the allegations in the complaint that are not entitled to the assumption of truth. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950-51 (2009). These include "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." Id. at 1949. Second, the Court must determine whether the complaint states a plausible claim for relief. Id. at 1950-51. This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. The plaintiff is required to plead facts that show more than the "mere possibility of misconduct." Id. The Court must review the factual allegations in the complaint "to determine if they plausibly suggest an entitlement to relief." Id. at 1951. When faced with alternative explanations for the alleged misconduct, the Court may exercise its judgment in determining whether plaintiff's conclusion is the most plausible or whether it is more likely that no misconduct occurred. Id. at 1950, 51-52.

## The Complaint

Plaintiff brings this action under 42 U.S.C. § 1983 and state law. Named as defendants are Keith Schafer (Director, Missouri Department of Mental Health ("DMH")); Felix Vincenz (Chief Operating Officer, Comprehensive Psychiatric Services, DMH); Julie Inman (Regional Executive Officer, DMH); Carol Dicknette (Office of Consumer Safety, DMH); Leigh Gibson (same); Alan Blake (Chief Operating Officer, SORTS); Jay Englehart (Psychiatrist, Medical Director, SORTS); Beth Weinkein (Dietician II, SORTS); Brenda Swift (Facility Grievance Coordinator, SORTS); Bob Wills (Chief Nursing Executive, SORTS); Joe Easter (RN, SORTS); Marybeth Rowe (same); Kevin Fletcher (Risk Management Committee, SORTS); Kristina Bender (Unit Program Supervisor, SORTS); and several unspecified John Does.

Plaintiff alleges that he was admitted to SORTS on August 8, 2008. Plaintiff says he had a ruptured lumbar disc at that time and that he weighed 145 pounds. Plaintiff claims that his normal body weight is 170 pounds, so he was 25 pounds underweight when he arrived at SORTS. After he was admitted to SORTS, plaintiff says, he was fed three regular meals a day, and plaintiff claims he began to gain weight.

Plaintiff states that on May 27, 2009, defendant Rowe told him he would no longer receive regular meals. Plaintiff asserts that Rowe told him he would not be able

to go to the dining room, and she told him that he would receive two "health shakes" in lieu of a regular meal. Plaintiff claims that he told defendant Blake about the dietary restriction but that Blake refused to talk to him.

Plaintiff alleges that a health shake is "a six ounce carton of chocolate milk with a few added vitamins and minerals."

Plaintiff used a dedicated phone line to call defendant Dicknette, and he informed her about the dietary restriction. Plaintiff says that Dicknette told him that the health shakes were nourishing, well balanced, and provided a varied diet.

Plaintiff asserts that on July 12, 2009, he decided he was not going to drink health shakes anymore. Plaintiff says he emptied one of his health shakes into two Styrofoam cups, which he took to the nursing station. Plaintiff claims he then "slammed each cup with a heavy book, which blew-up the contents in a spray of chocolate. Plaintiff then said, 'I am entitled to a regular meal, so do not try to give me healthshakes [*sic*] anymore or I will blow them up too.'"

Plaintiff states that he received a "bag lunch" the next day, which consisted of "a regular meal minus any hot liquids–no coffee, oatmeal, syrup, soup, gravy, or anything else that employees could construe as a liquid." Plaintiff says the liquid restriction was placed on him because defendant Bender had reported that plaintiff

microwaved the health shakes before smashing them at the nurses station, which plaintiff denies.

Plaintiff claims that on September 17, 2009, "after four days of being forced to drink healthshakes [*sic*], Plaintiff blew-up two more cups containing healthshakes [*sic*]." Plaintiff avers that after this incident he was fed "finger foods," which consisted of "one sandwich, a bag of chips, a small pack of cookies, and a piece of fruit."

Plaintiff says that on October 17, 2009, he "received cold soup. He smashed it with a book, along with a cup of red Kool-Aid, and told employees, 'I do not want cold soup anymore, I want hot soup like everybody else.'"

Plaintiff says that the next day his meals were further restricted to one sandwich and one piece of fruit. Plaintiff's diet was subsequently supplemented with a daily multi-vitamin.

Plaintiff claims that on December 7, 2009, his meals were increased to include a bag of chips and a Slim-Fast supplement bar. Plaintiff alleges that on December 8, 2009, defendant Weinkein told him that his food needs were reviewed by a dietician and that his current diet met those needs.

Plaintiff also complains that he did not receive a traditional Thanksgiving or Christmas dinner.

Plaintiff asserts that he was returned to a regular diet on March 4, 2010. Plaintiff claims that during the time he was on a restricted diet he lost a total of 16 pounds.

**Discussion**

1. Federal Claims

The Court finds that the complaint survives initial review as to defendants Blake and Rowe in their individual capacities. As a result, the Court will order the Clerk to serve process as to these defendants.

Plaintiff sues defendants Schafer, Vincenz, Inman, Dicknette, and Gibson in their official capacities only. Naming a government official in his or her official capacity is the equivalent of naming the government entity that employs the official, in this case the State of Missouri. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). "[N]either a State nor its officials acting in their official capacity are 'persons' under § 1983." Id. As a result, the complaint fails to state a claim upon which relief can be granted as to these defendants. Moreover, plaintiff's claims against all defendants in their official capacities fail to state a claim upon which relief can be granted.

"Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights." Madewell v. Roberts, 909 F.2d 1203, 1208 (8th Cir. 1990); see also Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985) (claim not cognizable under § 1983 where plaintiff fails to allege that defendant was personally

involved in or directly responsible for the incidents that injured plaintiff); Boyd v. Knox, 47 F.3d 966, 968 (8th Cir. 1995) (respondeat superior theory inapplicable in § 1983 suits). In the instant action, plaintiff has not set forth any facts indicating that defendants Englehart, Weinkein, Swift, Wills, Easter, Fletcher, or the John Does were personally responsible for plaintiff's placement on a restricted diet. As a result, the complaint fails to state a claim upon which relief can be granted as to these defendants in their individual capacities.

In general, fictitious parties may not be named as defendants in a civil action. Phelps v. United States, 15 F.3d 735, 739 (8th Cir. 1994). An action may proceed against a party whose name is unknown, however, if the complaint makes sufficiently specific allegations to permit the identity of the party to be ascertained after reasonable discovery. Munz v. Parr, 758 F.2d 1254, 1257 (8th Cir. 1985). In this case, plaintiff has failed to make specific allegations as to each John Doe defendant such that their identities could be ascertained after reasonable discovery. These particular "John Doe" defendants are both unidentified and indeterminate in number. This is not permissible. See Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995) (suit naming "various other John Does to be named when identified" not permissible). As a result, the complaint is legally frivolous as to the John Doe defendants.

Finally, it is clear that aspects of this case, if not the entire case, are malicious. By his own admission, plaintiff consistently fails to follow the rules at SORTS. And not only does he fail to follow the rules, he deliberately antagonizes staff by using food as a weapon. Several of the food restrictions were clearly and rationally related to the fact that plaintiff deliberately sprayed liquid food all over the nurses' station on several occasions. The Court finds that plaintiff is further attempting to deliberately harass SORTS staff by the filing of this lawsuit, which contains several frivolous claims. While the Court will allow this case to go forward at this time, if the Court determines at any time in the future that the entire case is malicious, the Court will dismiss this action without further proceedings.

2. State Law Claims

Plaintiff brings state law claims for medical malpractice, a claim under Mo. Rev. Stat. § 565.070 for third-degree assault, and a claim under Mo. Rev. Stat. § 630.115 for mistreatment of a patient.

The Court will allow plaintiff's medical malpractice claims against Blake and Rowe go forward at this time. However, pursuant to Mo. Rev. Stat. § 538.225 a plaintiff bringing

> any action against a health care provider for damages for personal injury . . . shall file an affidavit with the court stating that he or she has obtained the written opinion of a legally qualified health care provider which states

-8-

> that the Defendant health care provider failed to use such care as a reasonably prudent and careful health care provider would have under similar circumstances and that such failure to use such reasonable care directly caused or directly contributed to cause the damages claimed in the petition.
>
> . . .
>
> 5. Such affidavit shall be filed no later than ninety days after the filing of the petition unless the court, for good cause shown, orders that such time be extended for a period of time not to exceed an additional ninety days.

Under the prison mailbox rule, plaintiff filed his complaint on about February 10, 2012. The ninety day period for filing the proper affidavit, therefore, expires on about May 10, 2012. If plaintiff does not file a timely affidavit, the Court will dismiss plaintiff's medical malpractice claims without prejudice.

Plaintiff's claims under Mo. Rev. Stat. § 565.070 and Mo. Rev. Stat. § 630.115 are legally frivolous because these statutes do not provide for a private cause of action. As a result, these claim will be dismissed.

3.   <u>Motion for Appointment of Counsel</u>

Plaintiff moves for the appointment of counsel. After reviewing the complaint, the Court finds that the non-frivolous portions of the complaint are not so factually or legally complex as to warrant the appointment of counsel at this time. <u>See</u> <u>Johnson v. Williams</u>, 788 F.2d 1319, 1322-23 (8th Cir. 1986). As a result, the motion will be denied without prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed in forma pauperis [Doc. 2] is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff's motion for the appointment of counsel [Doc. 4] is **DENIED** without prejudice.

**IT IS FURTHER ORDERED** that plaintiff's official capacity claims against all defendants are **DISMISSED**.

**IT IS FURTHER ORDERED** that the Clerk shall issue process or cause process to issue upon the complaint as to defendants Alan Blake and Marybeth Rowe.

**IT IS FURTHER ORDERED** that the Clerk shall not issue process or cause process to issue upon the complaint as to defendants Keith Schafer, Felix Vincenz, Julie Inman, Carol Dicknette, Leigh Gibson, Jay Englehart, Beth Weinkein, Brenda Swift, Bob Wills, Joe Easter, Kevin Fletcher, Kristina Bender, or the John Doe defendants because, as to these defendants, the complaint is legally frivolous or fails to state a claim upon which relief can be granted, or both.

An appropriate Order of Partial Dismissal shall accompany this Memorandum and Order.

Dated this 7th day of March, 2012.

/s/Jean C. Hamilton
JEAN C. HAMILTON
UNITED STATES DISTRICT JUDGE