UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| THOMAS J. INGRASSIA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:12CV257 JCH |
| | ) |
| KEITH SCHAFER, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on plaintiff's motion for leave to file an amended complaint. Under Rule 15 of the Federal Rules of Civil Procedure, plaintiff may file the amended complaint as a matter of course. Hence, the motion will be granted. Because plaintiff is proceeding in forma pauperis, the Court is required to conduct a review of the amended complaint under 28 U.S.C. § 1915(e).

**28 U.S.C. § 1915(e)**

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss a complaint filed in forma pauperis if the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. An action is frivolous if it "lacks an arguable basis in either law or fact." Neitzke v. Williams, 490 U.S. 319, 328 (1989). An action is malicious if it is undertaken for the purpose of harassing the named defendants and not for the purpose

of vindicating a cognizable right. Spencer v. Rhodes, 656 F. Supp. 458, 461-63 (E.D.N.C. 1987), aff'd 826 F.2d 1059 (4th Cir. 1987).

To determine whether an action fails to state a claim upon which relief can be granted, the Court must engage in a two-step inquiry. First, the Court must identify the allegations in the complaint that are not entitled to the assumption of truth. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950-51 (2009). These include "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." Id. at 1949. Second, the Court must determine whether the complaint states a plausible claim for relief. Id. at 1950-51. This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. The plaintiff is required to plead facts that show more than the "mere possibility of misconduct." Id. The Court must review the factual allegations in the complaint "to determine if they plausibly suggest an entitlement to relief." Id. at 1951. When faced with alternative explanations for the alleged misconduct, the Court may exercise its judgment in determining whether plaintiff's conclusion is the most plausible or whether it is more likely that no misconduct occurred. Id. at 1950, 51-52.

## The Complaint

Plaintiff brings this action under 42 U.S.C. § 1983 and state law.  Named as defendants are Keith Schafer (Director, Missouri Department of Mental Health ("DMH")); Felix Vincenz (Chief Operating Officer, Comprehensive Psychiatric Services, DMH); Julie Inman (Regional Executive Officer, DMH); Carol Dicknette (Office of Consumer Safety, DMH); Leigh Gibson (same); Alan Blake (Chief Operating Officer, SORTS); Jay Englehart (Psychiatrist, Medical Director, SORTS); Beth Weinkein (Dietician II, SORTS); Brenda Swift (Facility Grievance Coordinator, SORTS); Bob Wills (Chief Nursing Executive, SORTS); Joe Easter (RN, SORTS); Marybeth Rowe (same); Kevin Fletcher (Risk Management Committee, SORTS); Kristina Bender (Unit Program Supervisor, SORTS); and several unspecified John Does.

Plaintiff alleges that he was admitted to SORTS on August 8, 2008.  Plaintiff claims that he was suffering from a ruptured lumbar disc at that time.  Plaintiff says that he had back surgery on October 22, 2008, and he states that at that time he was twenty-five pounds underweight.  Plaintiff asserts that his normal body weight is 170 pounds and that he weighed 145 pounds at the time of the surgery.

Plaintiff maintains that on his arrival at SORTS he was receiving three regular meals a day.

Plaintiff states that on May 27, 2009, defendant Rowe told him he would no longer receive regular meals. Plaintiff asserts that Rowe told him he would not be able to go to the dining room, and she told him that he would receive two "health shakes" in lieu of a regular meal. Plaintiff claims that he told defendant Blake about the dietary restriction but that Blake refused to talk to him.

Plaintiff alleges that a health shake is "a six ounce carton of chocolate milk with a few added vitamins and minerals."

Plaintiff used a dedicated phone line to call defendant Dicknette, and he informed her about the dietary restriction. Plaintiff says that Dicknette told him that the health shakes were nourishing, well balanced, and provided a varied diet.

Plaintiff claims that on June 8, 2009, he complained to the nurse on duty that staff members were kicking him in the heels while he was returning from the dining room. Plaintiff avers that on June 9, 2009, defendant Rowe said to him, "If you ever do anything to cause a staff member to kick your heels while off the ward, you will be confined to the ward and given healthshakes [*sic*]." Plaintiff states that Rowe then told Englehart to write an order for a twenty-four hour restriction to the ward each time he received a rule violation. Plaintiff alleges that Rowe then "ordered employees to create reasons to give Plaintiff a rule violation as often as possible to force him to be confined to the ward and be fed healthshakes [*sic*]."

-4-

Plaintiff claims that between May 27, 2009, and July 12, 2009, he was confined to the ward "many times" and forced to drink health shakes. Plaintiff asserts that his body weight was recorded at 166 pounds in July 2009.

Plaintiff asserts that on July 12, 2009, he decided he was not going to drink health shakes anymore. Plaintiff says he emptied one of his health shakes into two Styrofoam cups, which he took to the nursing station. Plaintiff claims he then "slammed each cup with a heavy book, which blew-up the contents in a spray of chocolate. Plaintiff then said, 'I am entitled to a regular meal, so do not try to give me healthshakes [*sic*] anymore or I will blow them up too.'"

Plaintiff states that he received a "bag lunch" the next day, which consisted of "a regular meal minus any hot liquids–no coffee, oatmeal, syrup, soup, gravy, or anything else that employees could construe as a liquid." Plaintiff says the liquid restriction was placed on him because defendant Bender had reported that plaintiff microwaved the health shakes before smashing them at the nurses station, which plaintiff denies.

Plaintiff says that on July 23, 2009, he was told that Englehart had written a "no liquid" order, so he was not receiving milk, fruit juice, or any other liquids. Plaintiff states that he filed many grievances on the issue, which were denied.

Plaintiff claims that on September 17, 2009, "after four days of being forced to drink healthshakes [*sic*], Plaintiff blew-up two more cups containing healthshakes [*sic*]." Plaintiff avers that after this incident he was fed "finger foods," which consisted of "one sandwich, a bag of chips, a small pack of cookies, and a piece of fruit."

Plaintiff asserts that on September 19, 2009, his body weight was recorded at 162 pounds.

Plaintiff says that on October 17, 2009, he "received cold soup. He smashed it with a book, along with a cup of red Kool-Aid, and told employees, 'I do not want cold soup anymore, I want hot soup like everybody else.'"

Plaintiff says that the next day his meals were further restricted to one sandwich and one piece of fruit. Plaintiff claims he complained to staff about not receiving cookies, and he says that he filed a grievance about it.

Plaintiff asserts that he called Dicknette on October 22, 2009, to complain about only receiving a sandwich and a piece of fruit, but he says she told him it was sufficient.

Plaintiff claims that he talked to Englehart about the food restrictions on October 27, 2009. Plaintiff states that Englehart told plaintiff that "he ordered the restrictions intending to cause Plaintiff so much suffering that he would decide to follow the 'rules' rather than be tortured."

Plaintiff says that he filed grievances with Gibson and Bender on October 28, 2009, which were denied.

Plaintiff states that Englehart ordered that he begin taking a daily multivitamin on November 4, 2009, for "poor nutrition."

Plaintiff avers that his body weight was recorded at 152 pounds on November 12, 2009, which represented a loss of 12 pounds in sixty days.

Plaintiff claims that on December 7, 2009, his meals were increased to include a bag of chips and a Slim-Fast supplement bar. Plaintiff alleges that on December 8, 2009, defendant Weinkein told him that his food needs were reviewed by a dietician and that his current diet met those needs. Plaintiff says that Weinkein is the dietician responsible for his diet.

Plaintiff also complains that he did not receive a traditional Thanksgiving or Christmas dinner. Plaintiff claims that during the time he was on a restricted diet he lost a total of 16 pounds.

## Discussion

The Court finds that the amended complaint survives initial review as to defendants Blake, Englehart, Weinkein, Rowe, and Dicknette in their individual capacities. These defendants are alleged to be responsible for plaintiff's food restrictions, or they are alleged to be in a position to stop any alleged violations.

Naming a government official in his or her official capacity is the equivalent of naming the government entity that employs the official, in this case the State of Missouri. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). "[N]either a State nor its officials acting in their official capacity are 'persons' under § 1983." Id. As a result, the complaint fails to state a claim upon which relief can be granted as to all defendants in their official capacities.

"Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights." Madewell v. Roberts, 909 F.2d 1203, 1208 (8th Cir. 1990); see also Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985) (claim not cognizable under § 1983 where plaintiff fails to allege that defendant was personally involved in or directly responsible for the incidents that injured plaintiff); Boyd v. Knox, 47 F.3d 966, 968 (8th Cir. 1995) (respondeat superior theory inapplicable in § 1983 suits); George v. Smith, 507 F. 3d 605, 609 (7th Cir. 2007) ("Only persons who cause or participate in the [Constitutional] violations are responsible. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation."). While the complaint contains conclusory allegations that defendants Schafer, Vincenz, Inman, Gibson, Swift, Wills, Easter, Fletcher, and the John Does were responsible for plaintiff's placement on a restricted diet, the factual allegations do not support these claims. These defendants were mainly alleged to be involved in the

grievance process.  This fails to demonstrate personal involvement in the alleged deprivations of plaintiff's rights.  As a result, the complaint fails to state a claim upon which relief can be granted as to these defendants in their individual capacities.

In general, fictitious parties may not be named as defendants in a civil action. Phelps v. United States, 15 F.3d 735, 739 (8th Cir. 1994).  An action may proceed against a party whose name is unknown, however, if the complaint makes sufficiently specific allegations to permit the identity of the party to be ascertained after reasonable discovery.  Munz v. Parr, 758 F.2d 1254, 1257 (8th Cir. 1985).  In this case, plaintiff has failed to make specific allegations as to each John Doe defendant such that their identities could be ascertained after reasonable discovery.  These particular "John Doe" defendants are both unidentified and indeterminate in number.  This is not permissible. See Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995) (suit naming "various other John Does to be named when identified" not permissible).  As a result, the complaint is legally frivolous as to the John Doe defendants.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to file an amended complaint [Doc. 11] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk shall issue process or cause process to issue as to defendants Englehart, Weinkein, and Dicknette.

**IT IS FURTHER ORDERED** that plaintiff's official capacity claims are **DISMISSED**.

**IT IS FURTHER ORDERED** that the Clerk shall not issue process or cause process to issue upon the complaint as to defendants Keith Schafer, Felix Vincenz, Julie Inman, Leigh Gibson, Brenda Swift, Bob Wills, Joe Easter, Kevin Fletcher, Kristina Bender, or the John Doe defendants because, as to these defendants, the complaint is legally frivolous or fails to state a claim upon which relief can be granted, or both.

An appropriate Order of Partial Dismissal shall accompany this Memorandum and Order.

Dated this 26th day of March, 2012.

/s/ Jean C. Hamilton
JEAN C. HAMILTON
UNITED STATES DISTRICT JUDGE