## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| THOMAS INGRASSIA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.  ) | No. 4:12CV257 JCH |
| ) | |
| KEITH SCHAFER, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on the motions of Alan Blake, Carol Dickneite, Jay Englehart, Beth Weinkein, and Marybeth Rowe (collectively, "defendants") to dismiss plaintiff's amended complaint for failure to state a claim upon which relief can be granted.  The motions will be denied.

### Standard

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, the Court must take all facts alleged in the complaint to be true and must construe the pleadings in the light most favorable to plaintiff. Gregory v. Dillard's, 494 F.3d 694, 709 (8th Cir. 2007).  The Federal Rules do not require great precision in pleadings.  Id. at 710.  "The simplified notice pleading standard under Fed. R. Civ. P. 8(a) requires only a statement that gives the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Id. (quotations omitted).  However, the

factual allegations in the complaint must be more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); see Gregory, 494 F.3d at 710. A complaint must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

## The Amended Complaint

Plaintiff brought this action under 42 U.S.C. § 1983 and state law for denial of adequate food and nutrition. Plaintiff is a civilly committed sex offender who resides in the Missouri Department of Health's Sexual Offender Rehabilitation Treatment Services center in Farmington, Missouri ("SORTS"). Defendants are responsible for operating SORTS.

Plaintiff alleged that he was admitted to SORTS on August 8, 2008. Plaintiff claimed that he was suffering from a ruptured lumbar disc at that time. Plaintiff said that he had back surgery on October 22, 2008, and he stated that at that time he was twenty-five pounds underweight. Plaintiff asserted that his normal body weight is 170 pounds and that he weighed 145 pounds at the time of the surgery.

Plaintiff claimed that on his arrival at SORTS he was receiving three regular meals a day.

Plaintiff stated that on May 27, 2009, defendant Rowe told him he would no longer receive regular meals. Plaintiff asserted that Rowe told him he would not be able to go to the dining room, and she told him that he would receive two "health shakes" in lieu of a regular meal. Plaintiff claimed that he told defendant Blake about the dietary restriction but that Blake refused to talk to him.

Plaintiff alleged that a health shake is "a six ounce carton of chocolate milk with a few added vitamins and minerals."

Plaintiff used a dedicated phone line to call defendant Dickneite, and he informed her about the dietary restriction. Plaintiff said that Dickneite told him that the health shakes were nourishing, well balanced, and provided a varied diet.

Plaintiff claimed that on June 8, 2009, he complained to the nurse on duty that staff members were kicking him in the heels while he was returning from the dining room. Plaintiff averred that on June 9, 2009, defendant Rowe said to him, "If you ever do anything to cause a staff member to kick your heels while off the ward, you will be confined to the ward and given healthshakes [*sic*]." Plaintiff stated that Rowe then told Englehart to write an order for a twenty-four hour restriction to the ward each time he received a rule violation. Plaintiff alleged that Rowe then "ordered employees to create reasons to give Plaintiff a rule violation as often as possible to force him to be confined to the ward and be fed healthshakes [*sic*]."

Plaintiff claimed that between May 27, 2009, and July 12, 2009, he was confined to the ward "many times" and forced to drink health shakes. Plaintiff asserted that his body weight was recorded at 166 pounds in July 2009.

Plaintiff asserted that on July 12, 2009, he decided he was not going to drink health shakes anymore. Plaintiff said he emptied one of his health shakes into two Styrofoam cups, which he took to the nursing station. Plaintiff claimed he then "slammed each cup with a heavy book, which blew-up the contents in a spray of chocolate. Plaintiff then said, 'I am entitled to a regular meal, so do not try to give me healthshakes [sic] anymore or I will blow them up too.'"

Plaintiff stated that he received a "bag lunch" the next day, which consisted of "a regular meal minus any hot liquids–no coffee, oatmeal, syrup, soup, gravy, or anything else that employees could construe as a liquid." Plaintiff said the liquid restriction was placed on him because a staff member had reported that plaintiff microwaved the health shakes before smashing them at the nurses station, which plaintiff denies.

Plaintiff said that on July 23, 2009, he was told that Englehart had written a "no liquid" order, so he was not receiving milk, fruit juice, or any other liquids. Plaintiff stated that he filed many grievances on the issue, which were denied.

Plaintiff claimed that on September 17, 2009, "after four days of being forced to drink healthshakes [*sic*], Plaintiff blew-up two more cups containing healthshakes [*sic*]." Plaintiff averred that after this incident he was fed "finger foods," which consisted of "one sandwich, a bag of chips, a small pack of cookies, and a piece of fruit."

Plaintiff asserted that on September 19, 2009, his body weight was recorded at 162 pounds.

Plaintiff said that on October 17, 2009, he "received cold soup. He smashed it with a book, along with a cup of red Kool-Aid, and told employees, 'I do not want cold soup anymore, I want hot soup like everybody else.'"

Plaintiff said that the next day his meals were further restricted to one sandwich and one piece of fruit. Plaintiff claimed he complained to staff about not receiving cookies, and he said that he filed a grievance about it.

Plaintiff asserted that he called Dickneite on October 22, 2009, to complain about only receiving a sandwich and a piece of fruit, but he said she told him it was sufficient.

Plaintiff claimed that he talked to Englehart about the food restrictions on October 27, 2009. Plaintiff stated that Englehart told plaintiff that "he ordered the

restrictions intending to cause Plaintiff so much suffering that he would decide to follow the 'rules' rather than be tortured."

Plaintiff stated that Englehart ordered that he begin taking a daily multivitamin on November 4, 2009, for "poor nutrition."

Plaintiff averred that his body weight was recorded at 152 pounds on November 12, 2009, which represented a loss of 12 pounds in sixty days.

Plaintiff claimed that on December 7, 2009, his meals were increased to include a bag of chips and a Slim-Fast supplement bar. Plaintiff alleged that on December 8, 2009, defendant Weinkein told him that his food needs were reviewed by a dietician and that his current diet met those needs. Plaintiff said that Weinkein is the dietician responsible for his diet.

## Discussion

On March 26, 2012, the Court reviewed plaintiff's amended complaint under 28 U.S.C. § 1915(e) and determined that plaintiff's claimed against defendants for denial of adequate food and nutrition stated a plausible claim under § 1983. Plaintiff alleged that he was subjected to food restrictions that resulted in his weight loss of about sixteen pounds. However, the Court dismissed plaintiff's claims against defendants in their official capacities, and the Court dismissed several named defendants from the complaint.

Defendants now argue that the amended complaint should be dismissed because, despite the alleged weight loss, plaintiff has failed to allege facts showing that he was denied adequate food. Defendants also argue that plaintiff failed to allege sufficient facts showing that they were aware of his weight loss. And defendants argue that because plaintiff has failed to plausibly allege that they violated his constitutional rights, they are entitled to qualified immunity.

This Court reiterates its previous finding that plaintiff's claim of denial of adequate food and nutrition stated a plausible claim for relief under the precedent of this Circuit. See Wishon v. Gammon, 978 F.2d 446, 449 (8th Cir.1992) (prisoners have right to nutritionally adequate diet); Divers v. Dep't of Corr., 921 F.2d 191, 193-94 (8th Cir.1990) (per curiam) (finding inmate's allegation of insufficient amounts of cold, unappetizing food prepared from restricted menu and delivered through unsanitary food slots not frivolous; reversing preservice dismissal to allow inmate chance to show diet was insufficient to maintain health); Burgin v. Nix, 899 F.2d 733, 734 (8th Cir.1990) (per curiam) (prisoner has constitutional right to adequate diet); Davis v. Missouri, 389 Fed. Appx. 579, 579-80 (8th Cir. 2010). Moreover, the Court finds that the allegations in the complaint, liberally construed, show that defendants were aware of the restrictions and weight loss.

"Qualified immunity protects state actors from civil liability when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Maness v. Dist. Court, 495 F.3d 943, 944 (8th Cir. 2007). Because the complaint states a plausible claim for denial of adequate food and nutrition, the Court finds that defendants have failed to show that they are entitled to qualified immunity at this stage of the case. As a result, the Court will deny the motions to dismiss.

To the extent that defendants seek to dismiss plaintiff's claims against them in their official capacities, the motions are moot. These claims have already been dismissed.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motions to dismiss [Docs. 24, 41] are **DENIED**.

Dated this 17th day of October, 2012.

/s/Jean C. Hamilton
JEAN C. HAMILTON
UNITED STATES DISTRICT JUDGE