# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| THOMAS J. INGRASSIA, | ) |
|---|---|
| Plaintiff, | ) |
| vs. | ) Case No. 4:12CV257JCH |
| KEITH SCHAFER, et al, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Before the Court is the Motion for Summary Judgment filed by Defendants Alan Blake, Jay Engelhart, Beth Weinkein, Carol Dickenette, and Marybeth Rowe. (ECF No. 65). The matter is fully briefed and ready for disposition.

## STANDARD

The Court may grant a motion for summary judgment if, the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See id.

A moving party always bears the burden of informing the Court of the basis of its motion. See Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party

must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the mere existence of some alleged factual dispute. See Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. See Anderson, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. See Anderson, 477 U.S. at 255. The Courts function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. See id. at 249.

## BACKGROUND[1]

Plaintiff is a civilly committed sex offender who was committed the Missouri Department of Health's Sexual Offender Rehabilitation Treatment Services Center in Farmington, Missouri (SORTS), no later than April 2001. Plaintiff alleges in his Amended Complaint that during the period from May 27, 2009, through March 4, 2010, while he resided at SORTS, Defendants' denied him adequate food and nutrition in violation of the Fourteenth Amendment to the United States Constitution. (ECF No. 13 (Amend. Compl.).

Southeast Missouri Mental Health Center (SMMHC) Policy No. S-EC.04 governing Meals and Meal Replacements states, that SMMHC "shall provide safe, effective dietary management of patients who are unable or unwilling to attend meals in the dining room." The purpose of Policy No. S-EC.04 is to "clearly define guidelines for dietary management of patients who are unable or unwilling to attend meals in the dining room." The Policy provides that "if a patient *refuses* to attend meals in the dining room or comply with all meal procedures . . . the nurse will consult with

---

[1]The facts are undisputed unless otherwise stated.

the primary care physician." "If a meal tray is not medically necessary, meal replacement will be offered for each meal refusal unless limited by program guidelines." A meal replacement is "[e]quivalent to 2 nutritional drinks that contain 300 calories." (ECF No. 66.2 (Policy) ¶¶ I-II, VI) (emphasis in original). Additionally, SMMHC Standard No. 1001.18 provides guidelines for dining room procedure. The purpose of Standard No. 1001.18 is to "provide guidelines for staff to maintain the dining room as a safe environment appropriate for psychiatric patients." This Standard states that "[p]atients who choose not to go to meals or are unable to attend meals in the dining room shall remain on the ward in the day hall or in bed." (ECF No. 66.3 (Standard) ¶ VI (7)).

Plaintiff escaped from the SORTS facility in 2001, and returned there in August 2008. By August 2, 2009, about one year after he returned to SORTS, Plaintiff had incurred 243 major violations and 150 infractions. (ECF Nos. 66 (Defendants' Statement of Uncontroverted Material Facts (DSUMF) ¶¶ 1-5; 69.2 (Plaintiff's Response to DSUMF) (PRDSUMF) ¶¶ 1-5).[2] From August 2008 until March 2009, he was on Special Precautions and Total Ward Restriction (TWR) "for risk of elopement due to his" 2001 escape. During this period he was not allowed to go to the dining room and was confined to his assigned housing ward where he received regular meals with no restrictions when he complied with security and did not receive any major violations. (ECF No. 69.7 ¶¶ 20-21).

On May 27, 2009, Plaintiff was given food restrictions. (Amend. Compl. ¶ 28; ECF No. 69.1 (Plaintiff's Statement of Uncontroverted Material Facts) (PSUMF) ¶ 7; ECF No. 73 (Defendants' Response to PSUMF) (DRPSUMF) ¶ 7). Plaintiff alleges, and Defendants do not admit or deny, that

---

[2]In many instances, in response to Defendants' Statement of Undisputed Material Facts, Plaintiff simply argues that the facts are not relevant. To the extent Plaintiff fails to actually refute Defendants' factual allegations the Court will consider them admitted.

on May 27, 2009, he was told he would receive health shakes instead of a regular meal. (Amend. Comp. ¶ 30).

On July 12, 2009, Plaintiff received two health shakes as a meal replacement. He poured a health shake into a styrofoam cup, heated it in the microwave, placed it on the desk in the nurses' station, and then smashed a book on top of it, forcing the contents to splatter on the desk, staff and documents. He smashed the health shakes to let the staff know he did not want them and so the staff would give him food. After this incident, Plaintiff did not receive health shakes. Also, after July 12, 2009, when Plaintiff was restricted to the ward he received bag lunches and a snack at night. (DSUMF ¶¶ 9-11; PRDSUMF ¶¶ 9-11; ECF No. 66.1 (Pl.'s Dep.) at 53-56). When Plaintiff did not receive a bag lunch, he received a regular meal tray with no hot liquids. (PSUMF ¶ 10; DRPSUMF ¶ 10). On July 22, 2009, it was ordered that Plaintiff receive no liquids hot or cold, other than water. (PSUMF ¶ 11; DRPSUMF ¶ 11). On November 4, 2009, it was ordered that Plaintiff receive a daily multivitamin, and on December 7, 2007, he started receiving a Slim Fast Bar three times a day, which added 600 calories to his diet per day. (PSUMF ¶ 29; DRPSUMF ¶ 29).

Defendant Beth Weinkein, a registered dietician for SORTS, attested that the estimated caloric count of food provided to Plaintiff which was sent from the SORTS dining room was approximately 2,400 calories.[3] (DSUMF ¶ 15, Ex. E ¶¶ 2-3, 7; PRDSUMF ¶ 15). Plaintiff contends and Defendants deny that after October 18, 2009, bag lunches, which normally contained one sandwich, one bag of chips, one pack of cookies, and one piece of fruit, were often missing one of these items. (PSUMF ¶ 19; DRPSUMF ¶ 19). Plaintiff contends that the caloric value of the bag lunches he received "could not be calculated until December 7, 2009, when [] Slim Fast Bars were

---

[3] She does not specifically attest that the food was a bag lunch.

4

added to the bag lunches." Plaintiff admits that the bag lunches had 1,600 calories, the Slim Fast Bars had 600 calories, and the "HS snack had 200 calories," resulting in a total of 2,400 calories a day, but states that prior to the addition of the Slim Fast Bars, he was receiving only 1,800 calories a day. (PRDSUMF ¶ 15). Contradicting his admissions, Plaintiff also asserts that the HS snack had between and 110 and 170 calories. (PSUMF ¶ 22).

Plaintiff's medical records reflect that upon his entering SORTS on November 16, 1999, he was 5'11" tall and weighed 162 ½ pounds, and that on August 18, 2008, upon his return to SORTS, he was 5'10" and weighed 150 pounds. (ECF No. 66.4 at 3-6). Also, on May 27, 2009, Plaintiff weighed 163 pounds (PSUMF ¶ 6; DRPSUMF ¶ 6); on August 2, 2009, he weighed 165 pounds (PSUMF ¶ 14; DRPSUMF ¶ 14); and Plaintiff's weight dropped from 162 pounds to 151 pounds from September 6, 2009, to November 4, 2009 (PSUMF ¶ 15; DRPSUMF ¶ 15).

Body Mass Index (BMI) is calculated by: (weight measured in pounds x 703) divided by (height measured in inches) squared. Normal BMI is 18.9-24.9. (DSUMF ¶ 4; ECF No. 66.6 (Weinkein Aff.) ¶ 5). Pursuant to the Mifflin-St. Joer equation, an individual's nutrition needs can be calculated by taking into account the individual's height, weight, age, and activity factor. (Weinkein Aff) ¶ 4). Dietician Weinkein attested that, for the period of May 2009 through March 2010, based on the formula for calculating nutritional needs, and using Plaintiffs weight of 151 pounds, height of 5'10", age of 53, and activity factor of 1.3, his estimated caloric needs were 2000 calories. Applying the formula for BMI, she calculated Plaintiff's BMI as 21.7 during this period, and concluded that this indicated Plaintiff's nutritional needs were being met. (Weinkein Aff. ¶¶ 4-5). Dietician Weinkein also attested that Plaintiff's nutritional related labs, including a comprehensive metabolic panel analysis, were within normal limits (Weinkein Aff. ¶ 6), but a copy

5

of these labs is not attached to her affidavit nor otherwise provided with Defendants' Motion for Summary Judgment. Plaintiff contends that Dietician Weinkein's attestations regarding his labs are not accurate; he did not have "'any 'nutritional related labs' in reference to the May 2009 through March 2010 time period until December 23, 2009"; and that a December 23, 2009 lab report reflects four abnormalities. (PRSUMF ¶ 14 (citing ECF No. 69.5)).

Plaintiff does not dispute the methodology applied by Dietician Weinkein in computing BMI and nutritional needs, although he disputes that his weight was 151 pounds throughout the relevant time frame; he asserts that as a result of Dietician Weinkein's assuming he weighed 151 pounds, Dietician Weinkein miscalculated his BMI and nutritional needs. (PRDSUMF ¶ 12; PSUMF 26). Further, Plaintiff asserts that his "normal body weight is 170 pounds" and his "actual weight is 165 pounds"; that he lost 14 pounds by November 4, 2009; his highest body weight during "the food restriction period" was 165 pounds on August 2, 2009, and his lowest weight was 151 pounds on November 4, 2009; he weighed 151 pounds again on January 3, 2010; and he lost 14 pounds by November 4, 2009, and 11 pounds between September 6, 2009, and November 4, 2009. (PRDUMF ¶¶ 8-13).

Plaintiff claims that his loss of weight establishes that his nutritional needs were not being met. Dietician Weinkein, on the other hand, attests that a weight loss of ten pounds over the course of three months, calculated to .15 pounds per day, is not nutritionally significant. (Weinkein Aff. ¶14).

## DISCUSSION

In their Motion for Summary Judgment, Defendants argue that the undisputed facts establish that they provided Plaintiff with adequate nutrition, and that, therefore, Plaintiff's claim that

Defendants failed to provide him with adequate nutrition fails.

Although Plaintiff is an involuntarily committed patient at a State hospital, and "not a prisoner per se, his confinement is subject to the same safety and security concerns as that of a prisoner." Revels v. Vincenz, 382 F.3d 870, 874 (8th Cir. 2004). Under such circumstances, however, his rights are appropriately addressed pursuant to the Fourteenth Amendment, rather than the Eighth Amendment. See id. (Eighth Amendment does not apply to safety and security concerns of involuntarily committed psychiatric patient; rather, the Fourteenth Amendment applies).

While there is a constitutional right to nutritionally adequate food, to establish a constitutional violation based on such a deprivation a plaintiff must present evidence that "the food he was served was nutritionally inadequate or prepared in a manner presenting an immediate danger to his health, or that his health suffered as a result of the food." Wishon v. Gammon, 978 F.2d 446, 449 (8th Cir. 1992). Placing a prisoner on a modified meal plan which he receives in a paper bag, however, does not by itself rise to the level of a constitutional violation. Cf. Banks v. Meck, 2013 WL 3802288, *3 (3rd Cir. July 23, 2013) (unpublished per curiam) (rejecting claim of Eighth Amendment violation by prisoner temporarily placed on "behavior modified meal plan," where he received same meals as other inmates but in paper bag; decision for restriction was reasonable as it was made after prisoner threatened safety of staff members) . On the other hand, weight loss *may be* evidence of a prisoner's receiving constitutionally inadequate food. See Obama v. Burl, 477 Fed. Appx. 409, 412 (8th Cir. 2012) (unpublished per curiam); Riley v. DeCarlo, 2013 WL 518617 (3rd Cir. Feb. 13, 2013) (unpublished per curiam) (weight loss of 20 pounds over five years did not establish Eighth Amendment violation for constitutionally inadequate nutrition).

Indeed, Dietician Weinkein attested that a weight loss of .15 pounds per day over three

7

months is not nutritionally significant. Nonetheless there remain genuine issues of material fact necessary for the Court to determine on summary judgment whether during the period of May 27, 2009, to March 4, 2010, Plaintiff was denied adequate food and nutrition, including but not limited to what Plaintiff weighed at various times, the caloric value of health shakes and snacks Plaintiff received, whether Slim Fast Bars were included in bag lunches Plaintiff throughout the period Plaintiff received them, and whether Plaintiff's weight loss was a result of his receiving inadequate nutrition. The Court also notes that factors other than weight loss and BMI may be indicative of whether Plaintiff received constitutionally inadequate nutrition. Cf. Day v. Norris, 219 Fed. Appx. 608, 610 (8th Cir. 2007) (unpublished per curiam) (dismissal premature where prisoner alleged, among other things, the *quality of food* was nutritionally inferior; "only four ounces of fruit juice was served and the vegetables were 'often rotten' and 'sometimes' contained dirt or other foreign objects").

Accordingly,

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment (ECF No. 65) filed by Defendants is **DENIED**.

Dated this 1st day of November, 2013.

                                                /s/Jean C. Hamilton
                                                United States District Judge