UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS J. INGRASSIA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:12CV257 JCH |
| | ) | |
| ALAN BLAKE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the Motion for Summary Judgment filed by Defendants Alan Blake, Jay Englehart, Beth Weinkein, Carol Dickneite, and Marybeth Rowe. (ECF No. 65). The matter is fully briefed and ready for disposition.[1]

## BACKGROUND

Plaintiff is a civilly committed sex offender who was committed to the Missouri Department of Mental Health Sexual Offender Treatment and Rehabilitative Services facility ("SORTS"), no later than April, 2001. (ECF Nos. 66 (Defendants' Statement of Uncontroverted Material Facts ("DSUMF")), ¶ 1; 69.2 (Plaintiff's Response to DSUMF ("PRDSUMF")), ¶ 1). Plaintiff alleges in his Amended Complaint that during the period from May 27, 2009, through March 4, 2010, while he resided at SORTS, Defendants denied him adequate food and nutrition in violation of the Fourteenth Amendment to the United States Constitution. (ECF No. 13 ("Amend. Compl.")).

---

[1] This Court originally denied Defendants' Motion for Summary Judgment on November 1, 2013. (ECF No. 74). Defendants filed an interlocutory appeal, and on August 20, 2014, the Court of Appeals for the Eighth Circuit remanded the matter to this Court for further consideration of Defendants' qualified immunity argument. (ECF No. 80). For the reasons set forth below, the Court concludes Defendants are not entitled to qualified immunity on Plaintiff's claim of inadequate nutrition.

Plaintiff originally was admitted to the SORTS facility in November, 1999. (DSUMF, ¶ 1). Plaintiff escaped from the SORTS facility in October, 2001, and returned there in August, 2008. (Id., ¶¶ 2, 3; Amend. Compl., ¶ 26). Plaintiff claims that he was suffering from a ruptured lumbar disc at that time, and had back surgery on October 22, 2008. (Amend. Compl., ¶ 27). According to Plaintiff, although he weighed 145 pounds at the time of the surgery, that was 25 pounds below his normal body weight of 170 pounds. (Id.). Plaintiff acknowledges that upon his arrival at SORTS, he was receiving three regular meals per day. (Id., ¶ 26).

Plaintiff alleges that on May 27, 2009, Rowe told him he would not be able to go to the dining room, and that he would receive two "health shakes" in lieu of a regular meal. (Amend. Compl., ¶¶ 28, 30). Plaintiff claims that he told Blake about the dietary restriction, but Blake refused to discuss the issue. (Id., ¶ 29). Plaintiff asserts he again was forbidden to go to the dining room on May 29, 2009, and for a period of twenty-four hours he was offered two health shakes for each meal. (Id., ¶ 31).

Plaintiff used a dedicated phone line to call Dickneite at the Office of Consumer Safety for the Department of Mental Health. (Amend. Compl., ¶ 34). Plaintiff informed her about the dietary restriction, and Dickneite responded that the health shakes were nourishing and well balanced, and provided a varied diet. (Id., ¶¶ 34, 35).

Plaintiff claims that on June 8, 2009, he complained to the nurse on duty that staff members were kicking him in the heels while he was returning from the dining room. (Amend. Compl., ¶ 36). According to Plaintiff, on June 9, 2009, Rowe said to him, "'If you ever do anything to cause a staff member to kick your heels while off the ward, you will be confined to the ward and given healthshakes [*sic*].'" (Id., ¶ 40). Plaintiff states that Rowe then told Englehart to write an order for a twenty-four hour restriction to the ward each time Plaintiff

received a rule violation. (Id., ¶ 42). Rowe allegedly further "ordered employees to create reasons to give Plaintiff a rule violation as often as possible to force him to be confined to the ward and be fed healthshakes [*sic*]." (Id., ¶ 43).

Plaintiff claims that between May 27, 2009, and July 12, 2009, he was confined to the ward "many times," and forced to drink health shakes. (Amend. Compl., ¶ 45).[2] His body weight was recorded at 166 pounds in July, 2009. (Id., ¶ 44).

Plaintiff asserts that on July 12, 2009, he decided he was not going to drink health shakes anymore. (Amend. Compl., ¶ 46). Plaintiff therefore emptied one of his health shakes into two Styrofoam cups, heated the cups in the microwave, took them to the nursing station, and "slammed each cup with a heavy book, which blew-up the contents in a spray of chocolate. Plaintiff then said, 'I am entitled to a regular meal, so do not try to give me healthshakes [*sic*] anymore or I will blow them up too.'" (Id., ¶ 47; DSUMF, ¶ 9).[3] After this incident Plaintiff did not receive health shakes; instead, when Plaintiff was restricted to the ward he received bag lunches and a snack at night. (DSUMF, ¶ 11; Pl.'s Dep., PP. 53-56). When Plaintiff did not receive a bag lunch, he received a regular meal tray with no hot liquids. (ECF No. 69.1 (Plaintiff's Statement of Material Facts ("PSMF")), ¶ 10). On July 23, 2009, Plaintiff claims Englehart ordered that Plaintiff receive no liquids, hot or cold, other than water from the ward water fountain. (PSMF, ¶ 11; Defendants' Response to Plaintiff's Statement of Uncontroverted Material Facts, ¶ 11; Amend. Compl., ¶ 51). Plaintiff alleges he filed many grievances on this issue, which were denied. (Amend. Compl., ¶ 52).

---

[2] According to Defendants, between August, 2008, and August, 2009, Plaintiff incurred 243 major violations and 150 infractions. (DSUMF, ¶ 5).
[3] Plaintiff smashed the health shake to let the staff know he did not want it, and to encourage the staff to give him food. (DSUMF, ¶ 10).

Plaintiff claims that on September 17, 2009, "after four days of being forced to drink healthshakes [*sic*], Plaintiff blew-up two more cups containing healthshakes [*sic*]." (Amend. Compl., ¶ 53). Plaintiff avers that after this incident he was fed "finger foods," which generally consisted of "one sandwich, a bag of chips, a small pack of cookies, and a piece of fruit." (Id.). On September 19, 2009, Plaintiff's body weight was recorded at 162 pounds. (Id., ¶ 54).

Plaintiff states that on October 17, 2009, he "received cold soup. He smashed it with a book, along with a cup of red Kool-Aid, and told employees, "'I do not want cold soup anymore, I want hot soup like everybody else.'" (Amend. Compl., ¶ 55). According to Plaintiff, the next day his bag lunch was missing the cookies, and when he complained, his meals were further restricted to one sandwich and one piece of fruit. (Id., ¶¶ 56, 57). Plaintiff filed a grievance about this withholding, but it was denied. (Id., ¶ 59).

Plaintiff asserts he again called Dickneite on October 22, 2009, to complain about only receiving a sandwich and a piece of fruit, but she told him that it was sufficient. (Amend. Compl., ¶ 60). Plaintiff claims he then talked to Englehart about the food restrictions on October 27, 2009, and Englehart responded that "he ordered the restrictions intending to cause Plaintiff so much suffering that he would decide to follow the 'rules' rather than be tortured." (Id., ¶ 61).

Plaintiff asserts Englehart ordered that he begin taking a daily multivitamin on November 4, 2009. (Amend. Compl., ¶ 64). According to Plaintiff, the multivitamin was administered due to "poor nutrition." (Id., ¶ 66). Plaintiff avers that his bodyweight was recorded at 152 pounds on November 12, 2009, which represented a loss of at least 10 pounds in sixty days. (Id., ¶ 68).[4]

---

[4] Plaintiff states his weight had further decreased, to 151 pounds, by December 4, 2009. (Amend. Compl., ¶ 76).

Plaintiff claims that on December 7, 2009, his meals were increased to include a bag of chips and a Slim-Fast supplement bar. (Amend. Compl., ¶ 77).[5] On December 8, 2009, Plaintiff alleges Weinkein (a registered dietitian) answered an earlier filed Team Request by stating that, "Your nutritional needs are calculated by a registered dietician. Your current diet meets these needs. You are also provided a multi-vitamin to supplement nutritional needs." (Id., ¶ 78).

On March 4, 2010, Plaintiff began receiving regular meals, including liquids, thus ending his period of restricted diet. (Amend. Compl., ¶¶ 82, 83).

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex*, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. *Anderson*, 477 U.S. at 256.

---

[5] The addition of three Slim-Fast supplement bars per day added 600 calories to Plaintiff's daily diet. (PSMF, ¶ 29).

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. *Anderson*, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. *Id*. at 249.

## DISCUSSION

**I.     Did Defendants Violate Plaintiff's Constitutional Rights?**

In their Motion for Summary Judgment, Defendants first assert they are entitled to judgment as a matter of law, as the undisputed facts establish that they provided Plaintiff with adequate nutrition.

Although Plaintiff is an involuntarily committed patient at a State hospital, and "not a prisoner per se, his confinement is subject to the same safety and security concerns as that of a prisoner." *Revels v. Vincenz*, 382 F.3d 870, 874 (8th Cir. 2004) (citation omitted), *cert. denied*, 546 U.S. 860 (2005). Under such circumstances, however, his rights are appropriately addressed pursuant to the Fourteenth Amendment, rather than the Eighth Amendment. *See id.* (Eighth Amendment does not apply to safety and security concerns of involuntarily committed psychiatric patient; rather, the Fourteenth Amendment applies).

Under the precedent of this Circuit, Plaintiff possesses a constitutional right to nutritionally adequate food. *See Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992) (prisoners have right to nutritionally adequate diet); *Burgin v. Nix*, 899 F.2d 733, 734 (8th Cir. 1990) (per curiam) (prisoner has constitutional right to adequate diet); *Davis v. Missouri*, 389 Fed. Appx. 579, 579-80 (8th Cir. 2010). In order to establish a constitutional violation based on an alleged deprivation, Plaintiff must present evidence that "the food he was served was nutritionally inadequate or prepared in a manner presenting an immediate danger to his health, or

that his health suffered as a result of the food." *Wishon*, 978 F.2d at 449. Merely placing a prisoner on a modified meal plan does not by itself rise to the level of a constitutional violation. *See Banks v. Meck*, 531 Fed. Appx. 205, 208-09 (3rd Cir. 2013) (unpublished per curiam) (rejecting claim of Eighth Amendment violation by prisoner temporarily placed on "behavior modified meal plan," where he received same meals as other inmates but in paper bag; decision for restriction was reasonable as it was made after prisoner threatened safety of staff members). On the other hand, weight loss may be evidence of a prisoner's having received constitutionally inadequate food. *See Obama v. Burl*, 477 Fed. Appx. 409, 412 (8th Cir. 2012) (unpublished per curiam).

Upon consideration, the Court finds that there remain genuine issues of material fact as to whether during the period from May 27, 2009, to March 4, 2010, Plaintiff was denied adequate food and nutrition. For example, the Court finds fact questions remain regarding the caloric value of the health shakes, snacks, and bag lunches Plaintiff received[6]; whether Plaintiff's bag lunches were missing items at various times, thereby further decreasing their caloric value; and whether Slim-Fast supplement bars eventually were added to the bag lunches to render them nutritionally sound. Furthermore, while dietician Weinkein attested that a weight loss of .15 pounds per day over three months was not nutritionally significant, neither she nor any other Defendant ever addressed the health implications of Plaintiff's contention that his weight loss actually occurred over the course of only two months. *See Davis*, 389 Fed. Appx. at 579 ("Davis alleged that he lost 19 pounds during his 8-month stay at the jail because he was denied sufficient food, and that he was always sick and lacked energy to get out of bed. In our view,

---

[6] For example, while Defendants attest the estimated caloric count of the bag lunches Plaintiff received were nutritionally sufficient, Plaintiff counters that the value was only calculated after December 7, 2009, when Slim-Fast supplement bars had been added.

these allegations sufficiently state a claim of denial of adequate food and nutrition."). Finally, the parties dispute whether Plaintiff's "nutritional related labs," performed in December, 2009, reflected abnormalities. (*See* DSUMF, ¶ 14; PRDSUMF, ¶ 14). Under these circumstances, Defendants' Motion for Summary Judgment on the basis that Plaintiff has failed to establish a violation of his constitutional rights must be denied.[7]

## II. Are Defendants Entitled To Qualified Immunity?

Defendants next assert they are entitled to qualified immunity with respect to Plaintiff's claim. Under Eighth Circuit law, "[q]ualified immunity protects government officials performing discretionary functions from liability for damages so long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Curry v. Crist*, 226 F.3d 974, 977 (8th Cir. 2000) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). The Court employs a two-part inquiry "to determine whether a lawsuit against a public official alleging a constitutional violation can proceed in the face of an assertion of qualified immunity." *Serna v. Goodno*, 567 F.3d 944, 951 (8th Cir.) (citing *Saucier v. Katz*, 533 U.S. 194, 200-01, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)), *cert. denied*, 558 U.S. 972 (2009).

> First, courts [] consider whether, taken in the light most favorable to the party asserting the injury,....the facts alleged show the [official's] conduct violated a constitutional right.....Second, courts [] ask whether the right was clearly established[8]...

---

[7] The Court notes that in their motion, Defendants further assert Blake, Dickneite, Weinkein and Rowe must be dismissed, as Plaintiff has failed to establish a causal link between those Defendants and the alleged deprivations. The Court's review of the record, however, reveals genuine issues of material fact remain with respect to each of these Defendants. In other words, Plaintiff specifically alleges that each party either participated in the deprivations, by ordering food restrictions or meal alternatives, and/or knew of Plaintiff's predicament and failed to take action to remediate the situation.

[8] While *Saucier* set forth the two-part test with a mandatory sequence for analysis, the Supreme Court has since reversed itself and eliminated the mandatory aspect of the sequential analysis.

*Id.* at 951-52 (internal quotation marks and citations omitted). "Unless the answer to both of these questions is yes, the defendants are entitled to qualified immunity." *Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009).

As noted above, with his claim Plaintiff implicates his rights under the Fourteenth Amendment, because as a civilly committed resident of SORTS Plaintiff retained a constitutionally protected interest in adequate nutrition. Plaintiff alleges he suffered both physical injury, in that his body deteriorated due to a lack of appropriate nutrition, and emotional and mental injuries, as a result of Defendants' restriction of his access to a proper diet. (*See* Amend. Compl., ¶¶ 87, 90, 91). The Court previously has determined that, taken in the light most favorable to Plaintiff, the party asserting the injury, the facts alleged show Defendants' conduct violated a constitutional right. Defendants do not deny the right was clearly established at the time of the alleged violation, and so their request for qualified immunity must be denied.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 65) is **DENIED**.

Dated this 15th Day of September, 2014.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE

---

*See Serna*, 567 F.3d at 952 (citing *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009)).